## A96A0647. MILLAR ELEVATOR SERVICE COMPANY et al. v. O'SHIELDS et al.

(475 SE2d 188)

BLACKBURN, Judge.

Defendants MARTA and Millar Elevator appeal the trial court's denial of their motion for summary judgment in the suit brought by O'Shields and his wife.[1] O'Shields was injured when he and a co-worker fell at the Five Points MARTA Station while riding a descending escalator that suddenly stopped with a loud noise and threw them forward.

MARTA contracted with Millar Elevator to assume responsibility to maintain, inspect and service the escalators.[2] Millar's serviceman, Clark, conducted the regular bi-monthly maintenance on the escalator for the six months prior to the incident. The servicemen were provided with a checklist of items to be inspected for defects, irregularities or malfunctions, and they noted on a form all maintenance and repairs made. When an escalator broke, MARTA contacted Millar, who would complete an "Emergency Call Log," or blotter sheet, that described the nature of the problem, the name of the MARTA employee contacting Millar and the time the call was received, the name of the Millar serviceman and the time he was sent out, a description of how the problem was resolved, and the time the work was completed.

Nine days before O'Shields' fall, Clark performed the regular bi-monthly maintenance. Linsey, another Millar serviceman, was on call for emergencies the morning of the incident and was instructed to investigate the problem. He found only one defect in the escalator. A rubber tire had become partially detached from the frame of one of its 140 to 160 step rollers. The step then became higher on the unimpaired side of the step, causing an upthrust switch to be tripped, a safety measure installed for the purpose of stopping the escalator.

1. In their motion for summary judgment, defendants attached an expert affidavit of Robert Lauer, an engineer specializing in elevator and escalator operations. His opinion was that Millar committed no act of negligence. At O'Shields' behest, the court struck the affidavit on the ground that it relied on documentation not part of the record or attached to the affidavit, as required by OCGA § 9-11-56 (e). O'Shields cites *Augustine v. Frame*, 206 Ga. App. 348 (425 SE2d

---

[1] Since Lennie O'Shields' claim is dependent on James', the opinion refers only to his, for simplicity.

[2] We view the evidence in favor of the nonmovant O'Shields and give him the benefit of every doubt and indulge every reasonable inference in his favor on the motion for summary judgment. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

296) (1992), and *King v. Sheraton Savannah Corp.*, 194 Ga. App. 618 (391 SE2d 457) (1990), for support. The documents are bi-monthly maintenance tickets, blotter sheets, MARTA police reports and other accident reports pertaining to the incident, and the ANSI A17.1 Safety Code for Elevators and Escalators.

OCGA § 24-9-67 provides that "[t]he opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." O'Shields argues that although serviceman Clark's affidavit attaches certain maintenance time tickets and blotter sheets, Lauer's affidavit does not show whether they are the same records he reviewed. These documents, which are part of the record, are sufficiently identified by Lauer to assure that they are the ones upon which his opinion was based. Thus his opinion could be tested. See *Hall v. Okehi*, 194 Ga. App. 721, 722 (1) (391 SE2d 787) (1990).

O'Shields further argues that since Lauer did not personally inspect the escalator, his opinion is not based on personal knowledge. Although an expert generally cannot state his opinion based on observations or reports not admitted in evidence, an expert may give an opinion based on facts which he personally observes, and where an expert personally observes data collected by another, his opinion is not objectionable merely because it is based, in part, on the other's findings. OCGA § 24-9-67. *Brown v. State*, 206 Ga. App. 800, 801 (427 SE2d 9) (1992); *Wood v. Browning-Ferris Indus. of Ga.*, 206 Ga. App. 707 (2) (426 SE2d 186) (1992). This is true whether or not the expert went to the scene. *Jones v. Ray*, 159 Ga. App. 734, 736 (4) (285 SE2d 42) (1981).

O'Shields also objected to the references to the ANSI A17.1 Safety Code for Elevators and Escalators, since it was not part of the record. Expert testimony as to the practices of an industry are acceptable. OCGA § 24-9-67; *Dan Gurney Indus. v. Southeastern Wheels,* 168 Ga. App. 504, 506 (4) (308 SE2d 637) (1983). This would include an expert's reliance on a Code used as the safety standard for an industry in forming his opinion. In this instance, the Code is the legislatively adopted standard in Georgia. OCGA § 8-2-104 (c). To the extent Lauer cited documents not in the record, such as the police reports, he relied on none of them in reaching his opinion.

2. The trial court's order denied defendants' motion for summary judgment on the ground that there were factual issues in dispute. MARTA and Millar argued that because O'Shields presented no evidence of negligence, the court essentially applied the doctrine of res ipsa loquitur, which was erroneous as demonstrated by *Ellis v. Sears Roebuck & Co.*, 193 Ga. App. 797 (388 SE2d 920) (1989). *Ellis* held that the doctrine does not apply to mechanical devices because they "get out of working order, and sometimes become dangerous and

cause injury without negligence on the part of anyone." Id. at 798.

O'Shields counters that he did not assert the doctrine and the court did not apply it. He maintains he did in fact present some evidence of MARTA and Millar's negligence, and thus it was unnecessary for him to assert res ipsa loquitur. This is not a case where the malfunction would not have occurred but for the negligence of someone who is in exclusive control of the instrumentality. *Ellis*, supra.

O'Shields argues that MARTA and Millar owed the duty of extraordinary care to him. OCGA § 51-1-3 defines extraordinary diligence as "that extreme care and caution which very prudent and thoughtful persons exercise under the same or similar circumstances. . . . The absence of such extraordinary diligence is termed slight negligence." He further relies on OCGA § 46-9-132, which provides that "[a] carrier of passengers must exercise extraordinary diligence to protect the lives and persons of his passengers but is not liable for injuries to them after having used such diligence." See *Mattox v. MARTA*, 200 Ga. App. 697 (409 SE2d 267) (1991).

The duty of extraordinary care is thus imposed on MARTA because it was operating an escalator. A long line of decisions in this state has so held. See, e.g., *Grant v. Allen*, 141 Ga. 106 (80 SE 279) (1913); *Gaffney v. EQK Realty Investors*, 213 Ga. App. 653 (445 SE2d 771) (1994); *Helmly v. Savannah Office Bldg. Co.*, 13 Ga. App. 498 (79 SE 364) (1913). The owner or operator of an elevator or escalator "is not a common carrier in the sense that he is bound to serve all the public; yet his duty as to protecting passengers in the elevator is the same [under this section] as that chargeable to carriers of passengers by other means." *Grant*, supra at 108 (1). It is not, however, an insurer of safety. *Ellis*, supra at 798; *James v. Otis Elevator Co.*, 854 F2d 429 (11th Cir. 1988).

Georgia has not addressed the issue of whether Millar, in its capacity as the escalator servicer, is held to the same duty as a common carrier. Other jurisdictions are divided on the issue. See *Tait v. Armor Elevator Co.*, 958 F2d 563, 567 (3rd Cir. 1992). However, even if Millar's duty to plaintiffs is one of ordinary care, see *Gaffney*, supra, on the facts before us, such a standard would be heightened due to the risk of injury posed to those traveling on an escalator. "The amount of care demanded by the standard of reasonable conduct must be in proportion to the apparent risk. As the danger becomes greater, the actor is required to exercise caution commensurate with it." Prosser and Keaton on Torts, p. 208, § 34 (5th ed. 1984).

3. With these standards in mind, a jury's consideration of the facts in the present case is required. The defendants' expert averred that "[v]isual inspection *rarely* will indicate that the bond between the tire and roller is about to fail." (Emphasis supplied.) This averment does not mean that visual inspection is unnecessary. Because

visual inspection can, albeit on rare occasions, indicate that the bond between the tire and roller is about to fail, such an inspection might be required, especially considering the potential risks herein involved. Furthermore, because 140 to 160 rollers on the escalator have the potential to fail, and a visual inspection *could* indicate a failure is imminent, a jury must determine the respective liability of MARTA and Millar under the facts herein.

The dissent's contention that the uncontroverted evidence indicates that either visual inspection or walking inspection is successful in detecting a broken step roller does not address the issue of detecting a roller *which is about to fail*. Such issue is addressed by defendants' expert's averments and not by Jim Marcusky's deposition testimony relied upon by the dissent.

Based on the foregoing, the trial court correctly denied defendants' motion for summary judgment.

*Judgment affirmed. McMurray, P. J., Pope, P. J., Johnson and Ruffin, JJ., concur. Beasley, C. J., Birdsong, P. J., Andrews and Smith, JJ., dissent.*

BEASLEY, Chief Judge, dissenting.

I respectfully dissent. I concur in Divisions 1 and 2, but not in Division 3.

Even applying the heightened standard of care to these facts, we should reverse, since O'Shields has not presented any evidence to suggest that MARTA or Millar were even slightly negligent. He was required to do so, because the legal presumption of negligence which he seeks to marshal to his aid is no longer valid. The case he relies on, *Piller v. Hanger Cab Co.*, 115 Ga. App. 260, 263 (154 SE2d 420) (1967), overlooked this Court's rejection of this substitute for proof which is explained in *Darlington Corp. v. Finch*, 113 Ga. App. 825, 828-829 (149 SE2d 861) (1966). The uncontroverted expert's affidavit states, "The very occasional failure of a step roller tire is inevitable on an escalator and cannot be avoided by proper maintenance. The tires have relatively long lives but their failure life is quite variable and cannot be predicted."

O'Shields contends that if Clark had made a visual inspection by opening the pit and shining a light on the rollers as they moved by, rather than just walking on each step, he might have seen that the step roller was about to fail at the time he made his last inspection before the incident. Marcusky, the MARTA employee responsible for monitoring the Millar contract, testified at deposition that either method can successfully detect a defective step roller, and that one method is not more effective than the other. As for being able to determine if the roller was about to break by visual inspection, the only evidence even remotely supporting O'Shields' contention is

Lauer's comment that "[v]isual inspection rarely will indicate that the bond between the tire and roller is about to fail." Lauer also stated, "The very occasional failure of a step roller tire is inevitable on an escalator and cannot be avoided by proper maintenance. The tires have relatively long lives but their failure life is quite variable and cannot be predicted. . . . [The rollers] normally give no warning that they are about to fail. When one hears a noise or feels a rumble, the tire has already failed."

O'Shields offers nothing but unsupported conjecture contradicting Lauer's testimony that an escalator step roller's failure "cannot be predicted." Furthermore, Linsey testified that the rubber on the broken roller "looked fairly strong" and "hadn't been worn very badly as opposed to others," and that he had no idea why the step roller casing separated from the wheel. Visual inspection on September 21 would have revealed nothing more than visual inspection did on the day of the incident.

O'Shields' contention does not create a factual dispute dependent on evidence; his assertion of "might have seen" is mere unsupported conjecture. Nor is there any evidence that the nature of the stop was the result of negligence. Since plaintiff O'Shields has the burden of putting forward some evidence of slight negligence which is unmet, his theory of liability necessarily fails. *James v. Otis Elevator Co.*, 854 F2d 429 (II) (11th Cir. 1988).

I am authorized to state that Presiding Judge Birdsong, Judge Andrews and Judge Smith join in this dissent.

### ORDER OF THE COURT.

On July 22, 1996, the appellants, Millar Elevator Service Company and Metropolitan Atlanta Rapid Transit Authority, filed a motion for reconsideration of this Court's opinion dated June 28, 1996. The appellants contend that their motion is timely as this Court issued a substituted opinion on July 12, 1996. However, the appellants' first motion for reconsideration was denied, and our substituted opinion merely revised the original opinion and did not change the judgment or the issue date. See Court of Appeals Rule 37 (f). Therefore, the appellants' motion is untimely as a first motion for reconsideration, and appellants have failed to obtain an order of this Court allowing a second motion for reconsideration. Based on the foregoing, the appellants' motion is hereby DISMISSED.

BEASLEY, Chief Judge, dissenting.

The motion for reconsideration should be entertained on its merits because it addresses a substantive change in the opinion, which was made after the original motion for reconsideration addressed the

first opinion. The change relates to the duty owed by Millar Elevator Service Company, and the majority opinion substituted a different legal duty than had been imposed in the original opinion.

Millar should be given the opportunity to seek reconsideration of this new ruling, which as the majority opinion acknowledged has not been previously stated in Georgia law. The purpose of motions for reconsideration cannot reasonably be served if they are not permitted after a significant substantive change is made in the opinion. Rule 37 (d) does not apply to this situation but rather to those where a losing party simply attempts a second bite at the same apple.

The motion should be considered and granted.

I am authorized to state that Judge Andrews, Judge Johnson and Judge Smith join in this dissent.

DECIDED JUNE 28, 1996 —
RECONSIDERATION DENIED JULY 12, 1996 AND
RECONSIDERATION DISMISSED JULY 31, 1996 — 

*Lokey & Smith, Malcolm Smith, Jon W. Burton*, for appellants.
*Adele L. Grubbs, Amelia G. Pray*, for appellees.