## A04A1475. AMERICAN MULTI-CINEMA, INC. et al. v. WALKER.

(605 SE2d 850)

RUFFIN, Presiding Judge.

Acting as next friend and natural guardian of Darius Walker, Laverne Walker sued American Multi-Cinema, Inc. and AMC Colonial Theaters, Inc. (collectively "AMC") and Kevin Kellas for, among other things, assault, battery, intentional infliction of emotional distress, false arrest, false imprisonment, and malicious prosecution. A jury subsequently found AMC and Kevin Kellas liable to Walker. AMC appeals, asserting numerous errors by the trial court. Although we find the evidence sufficient to support the jury's verdict, errors in the jury charge require reversal, and we remand for a new trial.

1. AMC first argues that the trial court erred in denying its motion for directed verdict and judgment notwithstanding the verdict (j.n.o.v.). On appeal from a trial court's rulings on motions for directed verdict and j.n.o.v.,

> we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; directed verdicts and judgments n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.[1]

Viewed in this manner, the evidence shows that on March 5, 1999, 13-year-old Darius Walker went to AMC to see a movie. After the movie, he waited outside for his mother to give him a ride home. Kevin Kellas, a white, off-duty Gwinnett County deputy sheriff who was working as a security guard for AMC that night, approached a group of teenagers outside the ticket booth. The group included Darius, an African-American. Kellas told the group that AMC policy allowed them to stay on the property for 20 minutes before a movie and 20 minutes after, and that they either needed to buy a ticket and go to a movie or go home.

Kellas later approached Darius, who was then standing by himself, and asked to see his ticket stub. Kellas checked ticket stubs to enforce AMC's policy against loitering. Darius was the only African-American in the area.

Darius testified that as he reached into his pocket to retrieve his ticket stub, he turned to see where his friends were. At that point, Kellas grabbed him, put him in a headlock, "flip[ped]" him to the ground, and handcuffed him. Kellas, on the other hand, testified that

---

[1] (Punctuation omitted.) *Paul v. Destito*, 250 Ga. App. 631 (550 SE2d 739) (2001).

Darius ignored his request to see the ticket stub and then walked away. According to Kellas, after Darius ignored Kellas' repeated requests to stop and physically resisted Kellas' attempts to stop him, Kellas took Darius' arm and used a "modified arm-bar" to force Darius to the ground. He then handcuffed Darius and took him to the theater office. Laverne and Jimmy Walker, Darius' parents, subsequently arrived at the theater.

Kellas arrested Darius for criminal trespass, obstruction, and giving a false name. These charges were later dismissed. Kellas also arrested Jimmy Walker, alleging that Jimmy falsely told Kellas that he was a police officer for the City of Atlanta. Jimmy apparently entered a plea of nolo contendere to that charge.

Darius had scrapes and bruises on his chest, stomach and back, and his parents took him to the hospital the day after the arrest. Shortly after the arrest, Kellas asked the Gwinnett County Internal Affairs Department to conduct an investigation to determine whether Kellas had done anything wrong.

Laverne Walker sued AMC and Kellas for, among other things, assault, battery, intentional infliction of emotional distress, false arrest, false imprisonment, and malicious prosecution. A jury returned a $3,000,000 verdict against AMC and a $2,633 verdict against Kellas.

(a) AMC argues that it cannot be held vicariously liable for Kellas' conduct. We disagree.

"In [vicarious liability] cases involving off-duty police officers working for private employers, . . . the employer escapes liability if the officer was performing police duties which the employer did not direct when the cause of action arose."[2] Here, AMC claims that there was no evidence to support Walker's vicarious liability claim because Kellas' contact with Darius arose only after Kellas developed a suspicion that Darius was trespassing and that his actions thereafter were "clearly police in nature." AMC repeatedly states in its brief that the "undisputed evidence" shows that Kellas was acting as a police officer and that AMC did not direct Kellas in performing those duties.

The trial testimony, however, belies AMC's argument. AMC set forth a policy regarding loitering. And Kellas testified that he told a group of teenagers, including Darius, about AMC's "no loitering" policy and later asked to see Darius' ticket stub because of the policy. Such evidence authorized the jury to conclude that Kellas confronted Darius in order to enforce AMC's policy, rather than to perform a police duty. Accordingly, the trial court did not err in denying AMC's

---

[2] (Punctuation omitted.) *Page v. CFJ Properties*, 259 Ga. App. 812, 813 (578 SE2d 522) (2003).

motion for directed verdict as to this claim.[3]

(b) AMC also argues that there was no evidence to support Walker's claims of negligent hiring and retention and premises liability. We disagree. "In order to sustain a claim for negligent hiring and retention, a claimant must show that the employer knew or should have known of the employee's propensity to engage in the conduct which caused the plaintiff's injury."[4] And in order to sustain a claim for premises liability, Walker had to show that AMC breached a duty to keep the premises safe.[5]

Walker based both of these claims on Kellas' testimony that two years prior to the encounter with Darius, he had an encounter with another teenager, a white male named Rush Jolly, while he was working as a security guard for AMC. He approached Jolly, who was smoking in violation of AMC's no-smoking policy, to take a pack of cigarettes away from him. The teenager refused several times, used foul language, and struck Kellas. Kellas used a "straight arm-bar" to take him to the ground and then handcuffed him. AMC knew about the incident, "sided" with Kellas, and banned Jolly from AMC's property. Kellas later decided not to press criminal charges.

Given Kellas' testimony regarding what might be construed as similarly aggressive and inappropriate treatment of another teenager while enforcing AMC policy, there was some evidence, however slight, to support Walker's claims. Accordingly, the trial court did not err in denying AMC's motion for directed verdict as to these claims.[6]

2. AMC argues that the trial court erred with respect to numerous jury instructions. "When an error in the charge of the court is shown to exist, it is presumed to be prejudicial and harmful, and this court will so hold unless it appears from the entire record that the error is harmless."[7]

(a) AMC argues that Charge 7 on ratification was erroneous. We agree. This charge informed the jury that

---

[3] See *Massachusetts Cotton Mills v. Hawkins*, 164 Ga. 594, 596 (1) (139 SE 52) (1927); see also *Seibers v. Dixie Speedway, Inc.*, 220 Ga. App. 811, 812-813 (1) (470 SE2d 452) (1996) (reversing grant of summary judgment on vicarious liability claim where questions remained regarding whether cause of action arose while off-duty deputies employed as security guards were implementing company policy).

[4] (Punctuation omitted.) *Tecumseh Products Co. v. Rigdon*, 250 Ga. App. 739, 740 (1) (552 SE2d 910) (2001).

[5] See OCGA § 51-3-1.

[6] See *Cox v. Brazo*, 165 Ga. App. 888, 889 (1) (303 SE2d 71) (1983), aff'd, *Brazo v. Cox*, 251 Ga. 491 (307 SE2d 474) (1983); *TGM Ashley Lakes, Inc. v. Jennings*, 264 Ga. App. 456, 462 (2) (590 SE2d 807) (2003).

[7] (Punctuation omitted.) *Valdosta Housing Auth. v. Finnessee*, 160 Ga. App. 552, 554 (3) (287 SE2d 569) (1981).

[w]here an employer ratifies the tort of its employee after its commission, it is the same as if the employer had commanded it, provided the employer had full knowledge of its employee's wrongdoing or an opportunity to know, yet deliberately failed to investigate. Ratification may be found where it is shown that the employee committed a willful injury and the employer thereafter continued to retain the employee.

Under Georgia law, "[w]here the employee was acting exclusively for himself and was not acting at all for the master, and did not profess to be acting for the employer, the mere retaining of the servant after knowledge of his tort would not constitute ratification binding the master."[8] Here, there is no language in the charge to indicate that ratification is dependent on Kellas' acting for or on behalf of AMC. Our review of this charge, therefore, leads us to conclude that the jury was misled into believing that it could find AMC liable solely based on its retention of Kellas after the incident, without regard to whether Kellas was acting for or on behalf of AMC. And, since there was conflicting evidence as to whether Kellas was acting on behalf of AMC, we cannot find that such error was harmless.[9] Accordingly, we reverse.

(b) AMC also argues that no evidence supported the spoliation charge given by the court. "Spoliation or destruction of evidence creates the presumption that the evidence would have been harmful to the spoliator."[10] And "spoliation" has been defined as "the destruction or the significant and meaningful alteration of evidence."[11]

Walker argues that the testimony of Kellas and AMC's manager provides evidence that documents had been altered, supporting the trial court's charge on the presumption of the spoliation. Kellas testified that he completed a report after the encounter with Darius, but then later issued a second report. AMC's manager testified that she too filled out an incident report, but later issued a second report.

Walker cites no case law in support of her argument, and we fail to see how issuing a second report, when there is no evidence that the first draft was destroyed or altered, supports a spoliation charge. Accordingly, the court erred in giving this instruction.

---

[8] (Punctuation omitted.) *Parry v. Davison-Paxon Co.*, 87 Ga. App. 51, 55 (2) (73 SE2d 59) (1952).

[9] See *Valdosta*, supra.

[10] *Lane v. Montgomery Elevator Co.*, 225 Ga. App. 523, 525 (1) (484 SE2d 249) (1997).

[11] *Sharpnack v. Hoffinger Indus.*, 231 Ga. App. 829, 830 (499 SE2d 363) (1998).

3. AMC also argues that the trial court committed several other charging errors. Because these alleged errors may resurface on retrial, we will address each of these arguments in turn.

(a) AMC argues that there was no evidence to support the jury charges relating to intentional infliction of emotional distress through the use of abusive language and violation of internal guidelines. Here, there was evidence that Kellas yelled at Darius, scaring him and causing him to cry, which supports the emotional distress charge. Walker also presented evidence that Kellas violated AMC guidelines by approaching Darius prior to when AMC's policy would have considered him to be loitering. Such evidence authorized the trial court's emotional distress charge.

(b) AMC claims that the charges relating to vicarious liability were redundant and confusing. Mere repetition of a principle of law will not authorize "a reversal unless it appears from the charge as a whole that there was such undue emphasis as to result in an unfair statement of the law."[12] Here, these charges were correct statements of law, and we find no undue emphasis.

(c) AMC argues that Charge 27 was individually erroneous because the last sentence of the charge led the jury to believe that if AMC hired Kellas to work in his police uniform to lend authority to his security job, then AMC was automatically liable. Charge 27, however, did not instruct the jury that AMC was automatically liable if it hired Kellas to work in his uniform. Instead, it charged that AMC could not immunize itself from liability simply by saying Kellas acted as a police officer.[13] And, the trial court specifically charged the jury that AMC would not be liable if the officer was, in fact, performing "police duties that the employer did not direct when the cause of action arose." Accordingly, the trial court did not err in giving this charge.

(d) AMC also argues that the trial court improperly commented on the evidence by charging the jury that "AMC has admitted that Kevin Kellas was its employee." However, AMC stipulated that Kellas was AMC's employee at the time of the incident. And the trial court "does not err in charging the jury that a certain fact has been proved, where it is established by undisputed evidence."[14] Moreover, given the language of the charges as a whole, we cannot agree with AMC that the inclusion of this sentence led the jury to believe that "the mere fact of employment was enough to find AMC liable."

---

[12] (Punctuation omitted.) *Jackson v. Rodriquez*, 173 Ga. App. 211, 213 (2) (325 SE2d 857) (1984).

[13] See *Smith v. Holeman*, 212 Ga. App. 158, 161 (4) (441 SE2d 487) (1994) (physical precedent only).

[14] *Segars v. Cornwell*, 128 Ga. App. 245, 250 (4) (196 SE2d 341) (1973).

4. AMC claims that the trial court committed several evidentiary errors. Like the claimed errors in the jury charges, these alleged errors may resurface on retrial, so we address them below.

(a) AMC argues that the trial court erred in denying its motion in limine to exclude all evidence suggesting that Kellas' actions were racially motivated. According to AMC, the record contains no evidence that he acted based on racial motivation. AMC also argues that such evidence was not relevant to Walker's claims, and, even if relevant, it was highly prejudicial. We disagree.

We review evidentiary rulings under an abuse of discretion standard.[15] And

> unless the potential for prejudice in the admission of evidence substantially outweighs its probative value the Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value. Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors.[16]

Here, there was evidence that Darius was the only African-American person in the area at the time of the incident and that Kellas initiated a review of his own actions to determine whether he had done anything wrong with respect to the entire incident, including issues of force or race. Under the circumstances, the trial court was authorized to find evidence of racial motivation relevant and more probative than prejudicial. Accordingly, the trial court did not abuse its discretion in denying AMC's motion in limine.

(b) AMC also asserts that the trial court erred in allowing hearsay testimony from one of Darius' schoolmates. Walker's counsel asked the schoolmate, Brian Dixon, whether there had been "talk at school of this being a racially motivated incident." Dixon responded that "[s]ome people had said that, yes sir." We agree that Dixon's response is hearsay and that the court erred in admitting this testimony.[17]

(c) AMC also argues that the trial court erred in excluding evidence of Jimmy Walker's nolo contendere plea as to the charge that he lied about being a police officer. AMC asserts that the charge was irrelevant to the issues in the case, but that at trial Walker repeatedly referred to Jimmy's arrest to suggest that Kellas was "out to get the entire Walker family," and that AMC should have been allowed to

---

[15] See *Dept. of Transp. v. Mendel*, 237 Ga. App. 900, 902 (2) (517 SE2d 365) (1999).

[16] *Byrne v. Fierman*, 256 Ga. App. 443 (1) (568 SE2d 494) (2002).

[17] See *Plemons v. State*, 155 Ga. App. 447, 449-450 (4) (270 SE2d 836) (1980).

present evidence of the nolo contendere plea because Walker "opened the door on this issue." We agree that, under these circumstances, the court erred in excluding evidence of Jimmy's nolo plea.[18]

5. Given our holding in Division 2, AMC's remaining allegation of error, which relates to the form of the verdict, is moot.

*Judgment reversed and case remanded for a new trial. Eldridge and Adams, JJ., concur.*

DECIDED OCTOBER 19, 2004 —
RECONSIDERATION DENIED NOVEMBER 3, 2004 — 

*Goldner, Sommers, Scrudder & Bass, Henry E. Scrudder, Jr., Shur, McDuffie, Williams & Morgan, Aaron J. Aberson, Magill & Atkinson, David M. Atkinson, Duncan & Mangiafico, Edgar S. Mangiafico, Jr.,* for appellants.

*Cochran, Cherry, Givens, Smith & Sistrunk, Shean D. Williams, Peter A. Law, Allen L. Broughton, Bondurant, Mixson & Elmore, Frank M. Lowrey IV,* for appellee.

---

[18] See *Brooks v. Cellin Mfg. Co.,* 251 Ga. 395, 397-398 (306 SE2d 657) (1983), overruled in part on other grounds; *Barnes v. State,* 157 Ga. App. 582, 585-588 (277 SE2d 916) (1981).