A09A1770. BEACH et al. v. B. F. SAUL PROPERTY COMPANY.
(694 SE2d 147)

BARNES, Judge.
Martha Beach and Sofia Deglel appeal the grant of a directed verdict to B. F. Saul Property Company[1] ("Saul Property") on their claims arising from an incident in which they were trapped and repeatedly bounced up and down uncontrollably for almost an hour and a half in a malfunctioning elevator in an office building owned by

---

[22] *Bennett v. State*, 292 Ga. App. 382, 385 (1) (665 SE2d 365) (2008).
[23] *Kollie v. State*, 301 Ga. App. 534, 543-544 (10) (687 SE2d 869) (2009).
[1] At one time ThyssenKrupp Elevator Company was a defendant, but it was dismissed from the case upon the motion of Beach and Deglel.

Saul Property. Saul Property did not dispute Beach and Deglel's account of the incident or contend that they were not trapped in the elevator as they asserted.

Although Beach and Deglel filed separate actions against Saul Property, the cases were consolidated for trial. Their complaints alleged that Saul Property negligently maintained the premises in question, and sought damages for the physical and emotional injuries they suffered.

Beach testified at trial that she and Deglel entered the elevator and pushed the button to go down, but the elevator went up until there was a metal-on-metal sound and it dropped down a little. Then, it stopped and began shaking them, bouncing them like a basketball, causing them to hit their heads and backsides, and clanging metal against metal. Beach was vomiting and "puking."

They tried the emergency phone, but nothing worked. Deglel called 911. They were bouncing so fast that when they tried to dial the phone, their fingers would bounce between digits. Beach testified it was like missing one's chair and falling to the floor; it was jarring, like her teeth were being jarred loose. The bouncing happened about five to ten seconds apart. Finally there was a loud crash and the elevator stopped; the doors were pried open and they were able to crawl out. Three or four men were gathered there. The EMTs came and wanted to take Beach to the hospital because her blood pressure was so high, but she did not want to go.

It had been raining on the day of the incident, but it was not stormy. There were no power surges the whole day. "It was an old, dreary, rainy, January, Atlanta, Georgia day." The other elevators seemed to be working.

Beach did not speak to Saul Property's building manager, but did receive an e-mail from her. Beach did not feel up to talking to her.

Deglel testified that during the time they were trapped in the elevator being bounced around, none of the emergency buttons worked. The elevator was going really fast; she was scared because "it was not a normal drop." While they were trapped, she called Saul Property and told the woman who answered that they were stuck in the elevator, but she was disconnected. Deglel called back and spoke to her two or three times telling her, "You have to get us now because we are going to die; the way this elevator is going, we are not going to make it. You have to get somebody in here." It seemed like they were in the elevator "forever." She was throwing up. She thought she was going to die.

Then there was a "boom sound" and the door opened. They crawled out of the elevator. She was concerned about Beach because she was having heart problems. The paramedics were there, but they were mainly treating Beach.

Then, a security man came and Deglel told him that Beach was hurt and she told him "*exactly what had happened*" and that she was aching everywhere, that they had been throwing up in the elevator, and how long they were stuck there. He said that he was going to report it. Deglel did not speak to anyone from Saul Property until the next week.

Beach's doctor testified that the trauma to her hand required surgery, and Deglel suffered from post-traumatic stress disorder. Beach and Deglel both introduced medical bills showing that they incurred substantial medical expenses.

Beach testified that the elevator malfunctioned every week, and Deglel testified that they were always skipping floors. Beach and Deglel introduced Saul Property's records that supported their testimony. Repeated entries in the records show that the elevators were not leveling, they became stuck on various floors, and people were repeatedly trapped in them. Further, numerous witnesses testified about their problems on the elevators. The elevators were undependable; they always malfunctioned; they were so erratic that the problems were not worth reporting; problems happened with enough regularity that problems also did not warrant reporting; the elevators had minds of their own. One witness testified that on several occasions the elevators would not stop, but would continue to go up and down, and that she reported this to the building's management "more than once."

After Beach and Deglel presented their case, Saul Property moved for a directed verdict contending that they had failed to present any evidence of its prior superior knowledge of any defect that may have caused the elevator to malfunction. The trial court found that evidence produced by Beach and Deglel showed that Saul Property had a program of inspection[2] and repair of the elevator, that Beach and Deglel did not present expert testimony about the cause of the malfunction, that they did not present sufficient evidence to prove that Saul Property had superior knowledge of any problem with the elevators, that they did not present any evidence that the inspections or maintenance Saul Property actually performed were negligent or that it was put on notice that the elevator was defective during any of the inspections. The trial court further found that Saul Property "had inspection and repair procedures in place and used all reasonable precautions to protect its passengers from harm." Accordingly, the court found that "there is no basis for a jury to find

---

[2] The evidence showed that the elevator was inspected by State inspectors on the morning of the incident.

that [Saul Property] knew, or had reason to know, that elevator five was defective or presented a risk of harm to [Beach and Deglel]."

The trial court also found that Beach and Deglel had failed to establish that Saul Property had notice of an injury at the time of the incident or otherwise had cause to remove the elevator from service until a proper state authority conducted an inspection. The trial court found, however, that even with the benefit of the spoliation presumption, the result would have been the same. Consequently, the trial court granted Saul Property's motion for a directed verdict.

Beach and Deglel contend the trial court erred by granting a directed verdict to Saul Property because the evidence they presented was sufficient to have their case decided by a jury. We agree, and reverse the grant of the directed verdict.

1. In Georgia,

> [a] directed verdict is authorized only when there is no conflict in the evidence on any material issue and the evidence, with all reasonable deductions and construed in favor of the non-moving party, demands a certain verdict. Further, the trial court is not authorized to weigh the evidence or decide issues of fact. Therefore, we cannot affirm this grant of a directed verdict if there is any evidence supporting [Beach and Deglel's] claims. Although a directed verdict would have been proper if [Beach and Deglel] simply failed to prove [their] case, we are satisfied the evidence is in conflict, and with all inferences that reasonably might be drawn therefrom, [including the presumption derived from Saul Property's spoliation of evidence,] does not *demand* a verdict in favor of [Saul Property]. . . . Although there is evidence which could support a verdict in favor of [Saul Property] that is not a sufficient basis for directing a verdict. There must be no evidence of any kind supporting [Beach and Deglel's] position.

(Citation and punctuation omitted.) *Moore v. American Suzuki Motor Corp.*, 203 Ga. App. 189, 189-190 (1) (416 SE2d 807) (1992).

Building owners owe those who use their elevators the duty of exercising extraordinary care.

> "The owner of an office building, equipped with an elevator which is operated for conveying his tenants and their employees and patrons to and from the various floors, is not a common carrier in the sense that he is bound to serve all the public; yet his duty as to protecting passengers in the elevator is the same as that chargeable to carriers of

passengers by other means. [Cits.] This duty requires him to exercise extraordinary diligence on behalf of himself and his agents to protect the lives and persons of his passengers. [OCGA § 46-9-132[3]]." *Grant v. Allen*, 141 Ga. 106, 108 (1) (80 SE 279) (1913); see generally OCGA § 8-2-101 (b).

*Gaffney v. EQK Realty Investors*, 213 Ga. App. 653, 655 (445 SE2d 771) (1994). Even though premises owners owe a duty of "extraordinary diligence," they are not ensurers of the safety of elevator passengers. *Millar Elevator Svc. Co. v. O'Shields*, 222 Ga. App. 456, 458 (2) (475 SE2d 188) (1996); see *Lane v. Montgomery Elevator Co.*, 225 Ga. App. 523, 524-525 (1) (484 SE2d 249) (1997).

Although some cases of this court have applied premises liability principles in common carrier cases, in *Southeastern Stages v. Stringer*, 263 Ga. 641 (437 SE2d 315) (1993), our Supreme Court disapproved the

> language in the Court of Appeals' opinion applying premises liability law to common carrier cases. The rule applicable in common carrier cases is that whenever a carrier, through its agents or servants, knows or has opportunity to know of a threatened injury, or might have reasonably anticipated the happening of an injury, and fails or neglects to take the proper precautions or to use proper means to prevent or mitigate such injury, the carrier is liable. It is the common carrier's duty to use proper care and vigilance to protect passengers from injuries by such persons that might reasonably have been foreseen and anticipated. Knowledge of the passenger's danger, or of facts and circumstances from which that danger may reasonably be inferred, is necessary to fix the carrier's liability in this class of cases. The carrier is not regarded as an insurer of his passenger's safety against every possible source of danger; but he is bound to use all such reasonable precautions as human judgment and foresight are capable of, to make his passenger's journey safe and comfortable.

(Citation and punctuation omitted.) Id. at 642-643. Therefore, even though some knowledge of the threat to the elevator passenger is required before liability may be imposed, the duties imposed on the elevator owner or operator are much greater because they are

---

[3] "A carrier of passengers must exercise extraordinary diligence to protect the lives and persons of his passengers but is not liable for injuries to them after having used such diligence."

"bound to use all such reasonable precautions as human judgment and foresight are capable of, to make his passenger's journey safe."

In *MARTA v. Rouse*, 279 Ga. 311 (612 SE2d 308) (2005), quoting *Savannah &c. R. Co. v. Boyle*, 115 Ga. 836, 838-839 (42 SE 242) (1902), our Supreme Court further explained the duty of extraordinary care owed by those who owe extraordinary diligence.

> [W]hen the circumstances are such that a person in the exercise of that degree of diligence known to the law as extraordinary care would see, or *should apprehend*, that the passenger is in danger of insult or injury; and when the circumstances were such that the employees . . . , in the exercise of the degree of diligence above referred to, should have foreseen that an insult or injury was to be reasonably apprehended, and failed or refused to use the means at hand to protect the passenger therefrom, the [carrier] is liable to the passenger for any damages he sustains as a consequence of such failure or refusal. *The general rule would seem to be that whenever a carrier, through its agents or servants, knows or has opportunity to know of a threatened injury, or might have reasonably anticipated the happening of an injury, and fails or neglects to take the proper precautions or to use proper means to prevent or mitigate such injury, the carrier is liable.* Knowledge of the passenger's danger, or of facts and circumstances from which that danger may reasonably be inferred, is necessary to fix the carrier's liability in this class of cases. The law now seems to be well settled that the carrier is obliged to protect his passenger from violence and insult, from whatever source arising. He is not regarded as an insurer of his passenger's safety against every possible source of danger; but *he is bound to use all such reasonable precautions* as human judgment and foresight are capable of, to make his passenger's journey safe and comfortable.

(Citations and punctuation omitted; emphasis supplied.)

Thus, owners or operators of an elevator, like common carriers of passengers, must exercise extraordinary diligence, i.e., "that extreme care and caution which very prudent and thoughtful persons exercise under the same or similar circumstances," OCGA § 51-1-3, *to protect* the lives and persons of their passengers. The absence of extraordinary diligence, slight negligence, is sufficient to impose liability in these cases. See *Millar Elevator Svc. Co. v. O'Shields*, supra, 222 Ga. App. at 458 (2).

With the testimony from Beach and Deglel and the other witnesses, as well as Saul Property's records, and giving Beach and Deglel the benefit of all reasonable deductions and construing the evidence, including the presumption arising from spoliation, as discussed infra, in their favor as the nonmoving parties, we cannot say that the evidence demanded a verdict in favor of Saul Property. Further, the trial court is not authorized to weigh the evidence or decide issues of fact as it has done in this case. We find that issues for the jury are presented on whether Saul Property knew or had opportunity to know of a threatened injury, and might have reasonably anticipated the happening of an injury, and failed or neglected to take the proper precautions or to use proper means to prevent or mitigate the injuries to Beach and Deglel. Additionally, issues of negligence, diligence, and proximate cause ordinarily are to be decided by a jury, and a court should not decide them except in plain and indisputable cases. *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 156 (1) (A) (256 SE2d 916) (1979). This is not such a case.

2. Beach and Deglel also allege that the trial court erred by finding that they were not entitled to the presumption of spoliation that arises from Saul Property's violation of OCGA § 8-2-106. In relevant part this Code section states:

> (a) The owner or lessee *shall*[4] report, by telephone, to the enforcement authority on the same day or by noon on the next work day, excluding state holidays and weekends, all elevator . . . related accidents involving personal injury or death. The owner or lessee *shall* also provide a written report of this accident within seven days.
>
> . . .
>
> (c) Any elevator . . . involved in an accident described in subsection (a) or (b) of this Code section *shall* be removed from service at the time of the accident. The equipment *shall* not be repaired, altered, or placed back in service until inspected by a certified inspector for the enforcement authority.

(Emphasis supplied.) Saul Property contends, and the trial court found, that it was not required to report the incident or take the elevator out of service until it could be inspected because it was not aware that the women suffered personal injuries. The evidence does not support that finding.

---

[4] "Shall" is generally construed as a mandatory directive. *State v. Henderson*, 263 Ga. 508, 510 (436 SE2d 209) (1993).

The evidence shows that both Beach and Deglel were injured in the accident and Saul Property's security officer knew of this because Deglel told Saul Property's security officer "exactly" what happened to them, that she was aching all over, and that Beach was hurt. She also told him that they had been vomiting. Further, the EMTs were on the scene treating Beach.

Saul Property's property manager testified that she was called by security and told about the incident. She was also told that paramedics were called to the scene. The security person told her that there had been an incident, they had gotten the women out of the elevator, that he had called the paramedics because he was concerned that one of the women either had a stroke or a heart condition, but that the paramedics had checked them out and they were fine and were going home. He also told her that one of the women was visibly upset. Despite this knowledge the property manager took no timely action to investigate whether Beach or Deglel were injured. She did not call the State, or otherwise comply with OCGA § 8-2-106, even though she had done so when another tenant was trapped in the elevator.

Given this evidence, the trial court erred by finding that Saul Property did not have notice of an injury sufficient to cause it to comply with OCGA § 8-2-106. If nothing else, the jury was required to decide whether OCGA § 8-2-106 was implicated. Countenancing this degree of wilful ignorance will, in effect, eliminate the notice requirement from our law. This error is then compounded by the trial court's reliance on the post-incident inspection by Saul Property's elevator maintenance provider to support Saul Property's defense that the elevator was functioning properly.

Moreover, the trial court's finding that the presumption would have made no difference in the case misperceives the nature of the presumption. The presumption is "that the evidence would have been harmful to the spoliator." (Punctuation and footnote omitted.) *American Multi-Cinema v. Walker*, 270 Ga. App. 314, 317 (2) (b) (605 SE2d 850) (2004). See also OCGA § 24-4-22.[5] Proof of spoliation raises a rebuttable presumption that the evidence would have been harmful to Saul Property and thus the evidence favored Beach and Deglel, a fact rendering the grant of a directed verdict[6] inappropriate.

---

[5] If a party has evidence in his power and within his reach by which he may repel a claim or charge against him but omits to produce it, or if he has more certain and satisfactory evidence in his power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against him is well founded; but this presumption may be rebutted.

[6] Although *Baxley v. Hakiel Indus.* and *Lane v. Montgomery Elevator Co.* are summary judgment cases, that principle applies equally to motions for directed verdict because the standards for both motions are the same. See OCGA §§ 9-11-50 (a) and 9-11-56 (c), and *Svc.*

*Baxley v. Hakiel Indus.*, 282 Ga. 312, 313 (647 SE2d 29) (2007); *Lane v. Montgomery Elevator Co.*, supra, 225 Ga. App. at 525.

As in *Baxley v. Hakiel Indus.*, "a meaningful link" existed between Beach and Deglel's claims against Saul Property and the spoliation because an independent inspection by a certified State inspector could have revealed evidence relevant to the critical issue of the cause of the elevator's malfunction and any relationship between the previous incidents involving the elevator. *Baxley v. Hakiel Indus.*, supra, 282 Ga. at 313-314. Without a timely State inspection, no expert could be sure that the elevator had not been repaired or modified after the incident. Although Saul Property's elevator maintenance provider attributed the cause of the incident to a power surge caused by lightning, a cause disputed by Beach and Deglel, without a timely State inspection, not affected by earlier repair efforts, "plaintiffs would never be able to show what malfunctioned and caused their injuries." *Lane v. Montgomery Elevator Co.*, supra, 225 Ga. App. at 526 (1).

Moreover, we do not find that *Peterson Properties Corp. v. Finch*, 235 Ga. App. 86 (508 SE2d 463) (1998), requires a different result because *Peterson* is distinguishable on its facts. See *Thomas v. MARTA*, 300 Ga. App. 98, 101 (1) (684 SE2d 83) (2009). The court in *Peterson* relied upon the absence of any evidence that reports of problems with the elevator had been received; in this case, however, the evidence shows repeated incidents with the elevators that were known to Saul Property. Accordingly, the spoliation rule as expressed in *Lane v. Montgomery Elevator Co.* should have applied to this case, and the trial court erred by finding otherwise.

Therefore, the grant of the directed verdict to Saul Property must be reversed.

*Judgment reversed. Johnson, P. J., Blackburn, P. J., and Ellington, J., concur. Miller, C. J., concurs in judgment only. Andrews, P. J., and Mikell, J., dissent.*

ANDREWS, Presiding Judge, dissenting.

Martha Beach and Sofia Deglel alleged they suffered physical injuries and physical and mental pain and suffering when an elevator malfunctioned while they were using it to exit the office building where their employer leased space from the building owner, B. F. Saul Property Company. They sued Saul Property alleging that it negligently failed to protect them as passengers in the elevator by

---

*Merchandise v. Jackson*, 221 Ga. App. 897, 898 (1) (473 SE2d 209) (1996) ("Under OCGA §§ 9-11-56 (c) and 9-11-50 (a), summary judgments and directed verdicts are appropriate only when the court, viewing all the facts and reasonable inferences from those facts, in a light most favorable to the nonmoving party, concludes that there are no issues to be tried.").

adequately maintaining or repairing the elevator to keep it in safe operating condition. The trial court correctly directed a verdict in favor of Saul Property at the close of the plaintiffs' evidence because Beach and Deglel failed to produce any evidence that Saul Property was negligent.

At the end of the work day, Beach and Deglel left their office on the thirteenth floor of the sixteen story office building and entered the freight elevator to descend and exit the building. There is no evidence as to why they chose to use the freight elevator rather than any of the other four passenger elevators in the building, which Beach said were operating and being used by other office workers. Nothing, however, shows that office workers were not invited to use the freight elevator. There is no evidence that the freight elevator was malfunctioning in any observable manner when the door opened and Beach and Deglel entered. According to Beach and Deglel, after they entered the elevator, they pushed buttons to go down to different levels, the door shut, and, instead of going down, the elevator went up to the fifteenth or sixteenth floor. The elevator made a banging sound, then bounced and shook them in a jarring manner as it made metal clanging noises while continuing to go up and down. Beach and Deglel said they were entrapped in the elevator under these circumstances for an hour and twenty-five minutes until elevator maintenance, building security, or paramedics were able to get them out of the elevator on the ninth floor.

As the owner of the office building, Saul Property had a nondelegable duty to exercise the same extraordinary diligence as a common carrier to protect the passengers invited to use the elevators in its building. *Gaffney v. EQK Realty Investors*, 213 Ga. App. 653-655 (445 SE2d 771) (1994). The record shows that Saul Property entered into a contract providing for ThyssenKrupp Elevator Corporation to maintain and repair the elevators in the building.[7] The fact that Saul Property's duty to protect the passengers in its elevators was nondelegable did not prevent it from contracting with an independent elevator expert, ThyssenKrupp, to perform the maintenance and repairs necessary to keep the elevators reasonably safe; rather the nondelegable duty means that Saul Property cannot avoid its duty by contracting with a third party, and that it remained vicariously liable for any negligence by ThyssenKrupp. Id. In general, the duty to exercise "extraordinary diligence" means the exercise of "extreme care and caution which very prudent and thoughtful persons exercise under the same or similar circumstances," the absence of which is

---

[7] Beach and Deglel initially sued both Saul Property and ThyssenKrupp, but they subsequently obtained an order dismissing ThyssenKrupp from the case without prejudice.

termed "slight negligence." OCGA § 51-1-3. Accordingly, Saul Property could be held liable on the basis of its own slight negligence which proximately caused the injuries to Beach and Deglel, or on the basis of its vicarious liability for slight negligence on the part of ThyssenKrupp which proximately caused the injuries to Beach and Deglel.

In the absence of any negligence, Saul Property was entitled to a directed verdict. "[A] directed verdict is appropriate only if there is no conflict in the evidence as to any material issue and the evidence introduced, construed most favorably to the party opposing the motion, demands a particular verdict. OCGA § 9-11-50 (a)." *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 137 (508 SE2d 646) (1998). Under this standard, where the record is devoid of any evidence to support an essential element of the nonmovant's claim, no factual issue exists and a directed verdict is appropriate. *Parsells v. Orkin Exterminating Co.*, 178 Ga. App. 51, 52 (342 SE2d 13) (1986). Construing the record in favor of Beach and Deglel, the trial court properly granted Saul Property's motion for a directed verdict because there is no evidence that Saul Property was itself slightly negligent in maintaining and repairing the elevator at issue, and no evidence that Saul Property was vicariously liable for slight negligence by ThyssenKrupp in maintaining and repairing the elevator.

"This Court has long recognized that mechanical devices such as [elevators] get out of working order, and sometimes become dangerous and cause injury *without negligence on the part of anyone*. This evidence alone without any showing of slight negligence, does not create a triable issue." (Citation and punctuation omitted; emphasis in original.) *Sparks v. MARTA*, 223 Ga. App. 768, 770 (478 SE2d 923) (1996). It follows that the duty to exercise extraordinary diligence to protect passengers on an elevator does not make the elevator owner an insurer of the safety of its passengers, and does not make the owner liable for injury caused by the mechanical malfunction of an elevator in the absence of at least slight negligence. Id. at 768. We held in *Sparks*, supra, at 769 and in *Brady v. Elevator Specialists*, 287 Ga. App. 304, 308 (653 SE2d 59) (2007), that extraordinary diligence and the absence of slight negligence can be demonstrated by evidence of a regular program of maintenance and repair for the elevator showing that the elevator was operating properly prior to the malfunction which caused the injury. When the evidence shows that the owner has taken reasonable measures to keep the elevator maintained and repaired, and there is no evidence that the owner actually knew about or should have reasonably anticipated the elevator malfunction which caused the injury, there is an absence of even slight negligence and the owner is not liable for injury caused by the mechanical malfunction. Id.; *Sparks*, 223 Ga. App. at 769-770.

In the present case, the record includes evidence of a program of regular elevator inspection, maintenance and repair carried out by ThyssenKrupp pursuant to its contract with Saul Property. The evidence shows that for the 53-week period up to and including the day of the malfunction at issue, ThyssenKrupp performed scheduled preventative maintenance on all the elevators in the building on 63 occasions, including a regular weekly maintenance schedule plus other scheduled maintenance. The evidence shows unscheduled service calls over this period in which ThyssenKrupp responded to and fixed reported problems on all five of the elevators in the building. There is no evidence of any unresolved problems with any of the elevators in the building leading up to and including the day of the malfunction at issue. The last reported problem relating to the freight elevator used by Beach and Deglel was reported and resolved two months prior to the malfunction at issue. There is no evidence that the amount of elevator malfunctions or repairs for the five elevators in the building exceeded what would be normally expected. In fact, Saul Property's building manager testified that the elevator repair costs at the building were not outside the norm. Two days before the malfunction at issue, ThyssenKrupp inspected and performed eight hours of scheduled maintenance on the elevators in the building. Just hours prior to the malfunction at issue (on the morning of the malfunction), the elevators were inspected by State inspectors. There is no evidence that any problems were discovered with any of the elevators as a result of these inspections. There is no evidence that Saul Property failed to report elevator malfunctions to ThyssenKrupp, and no evidence that any of the regularly scheduled maintenance or other repairs by ThyssenKrupp were not properly performed. Beach testified that she had never previously experienced and was not aware of any elevator in the building malfunctioning by bouncing up and down like the freight elevator in the present incident. Deglel said that, although there were general complaints about the elevators in the building, she was not aware of prior complaints made to the building manager or to elevator maintenance. Although Beach and Deglel testified along with other co-workers that elevators in the building malfunctioned in various ways, there is no evidence that any malfunctions reported were not responded to and fixed. Moreover, the malfunction at issue occurred on the freight elevator, one of five elevators in the building. None of the testimony given by Beach, Deglel, or other co-workers about elevator malfunctions which occurred prior to the malfunction at issue specified that the malfunctions occurred on the freight elevator. In *Peterson Properties Corp. v. Finch*, 235 Ga. App. 86, 87 (508 SE2d 463) (1998), we concluded that general testimony from office workers that elevators malfunctioned in a building with multiple eleva-

tors failed to show that prior malfunctions occurred on the elevator at issue, and failed to support a claim that the owner should have anticipated the malfunction at issue.

The record shows that Saul Property (and ThyssenKrupp with which it contracted to maintain and repair the elevator) took reasonable steps to keep the freight elevator in safe operating condition, and that the elevator was operating properly before the mechanical malfunction occurred. Because there was no evidence that Saul Property knew about or should have reasonably anticipated and prevented the malfunction at issue, Saul Property was not negligent in any degree; was not liable for any resulting injury; and was entitled to a directed verdict.

Beach and Deglel claim that Saul Property violated OCGA § 8-2-106, and that this entitled them to an evidentiary presumption precluding the directed verdict. The provisions of OCGA § 8-2-106 require that the owner of an elevator report an elevator accident "involving personal injury" to the appropriate inspection authority by noon on the next work day; that the elevator be removed from service at the time of the accident; and that the elevator not be repaired, altered, or placed back in service until inspected by the appropriate authority. In *Lane v. Montgomery Elevator Co.*, 225 Ga. App. 523, 525 (484 SE2d 249) (1997), we found that, if a violation of OCGA § 8-2-106 was proved, "then such conduct would constitute a form of spoliation of evidence, because by working on the elevator, the evidence would have been tampered with, altered or destroyed." If such spoliation occurred, then a rebuttable presumption arises that the altered or destroyed evidence favors the party injured in the elevator accident. Id. It was undisputed that Saul Property did not report the malfunction pursuant to OCGA § 8-2-106, and that ThyssenKrupp (pursuant to its contract with Saul Property) inspected the elevator the day after the malfunction and placed the elevator back in service. Accordingly, Beach and Deglel claim that they were entitled to a rebuttable presumption that evidence of the mechanical cause of the malfunction was destroyed or altered by ThyssenKrupp's inspection; that the evidence was favorable to them; and that this evidentiary presumption precluded the grant of a directed verdict in favor of Saul Property.

This claim fails for two reasons. First, the trial court rejected the spoliation claim by finding that Saul Property did not violate the reporting provisions of OCGA § 8-2-106 because the evidence did not show that Saul Property had notice that the elevator accident involved personal injury to Beach or Deglel. We review a trial court's denial of a motion for spoliation sanctions for an abuse of discretion. *R. A. Siegel Co. v. Bowen*, 246 Ga. App. 177, 180-182 (539 SE2d 873) (2000). In considering a motion for spoliation sanctions, the trial

court makes necessary factual findings. *Bouve & Mohr, LLC v. Banks*, 274 Ga. App. 758, 762 (618 SE2d 650) (2005). We accept the trial court's factual findings on this issue where there is any evidence to support them. See *Addington v. Anneewakee, Inc.*, 204 Ga. App. 521, 522 (420 SE2d 60) (1992) (trial court is trier of fact in discovery disputes, and court's factual finding will not be reversed if there is any evidence to support it).

Evidence showed that Saul Property's building manager was notified by building security that Beach and Deglel had been checked out by paramedics after the entrapment in the elevator and that there was "no problem" and "they were fine" and they were going home. Beach testified that she did not report any injury to the paramedics. She testified that, after she got out of the elevator and was checked out by paramedics, co-workers took her back to her office in the building where "they got wet towels and then calmed us down," and she then drove home. Although a building security officer thought Beach may have had a stroke or heart condition, there was no evidence to confirm this, and Beach denied it. Beach first sought medical attention five or six days after the incident. Deglel testified that, after getting out of the elevator, she was seen by the paramedics but received no medical treatment. Deglel was confronted on cross-examination with testimony she gave in a prior deposition in which she admitted that paramedics asked her if she was okay and she responded "yeah." Cross-examination also showed that, when Deglel was asked in the prior deposition if she reported any injuries to the paramedics, she responded, "I don't remember." After seeing the paramedics, Deglel testified that she went with Beach to their office where co-workers calmed them down with wet towels. She said her fiancé (now husband) then picked her up from work, they drove to a Taco Bell restaurant where they stayed for about an hour and then went home. Deglel testified that she sought no medical treatment until more than a month after the incident. Because there was evidence in the record to support the trial court's factual finding that Saul Property had no notice that the elevator accident involved "personal injury" to Beach or Deglel, and that there was no violation of the reporting provisions of OCGA § 8-2-106, this Court is required to uphold it on appeal.

Second, even if Saul Property violated the reporting provisions of OCGA § 8-2-106, and Beach and Deglel were entitled to a rebuttable presumption that ThyssenKrupp's inspection destroyed or altered evidence showing the mechanical cause of the elevator malfunction, no presumed malfunction could have been favorable evidence precluding the grant of the directed verdict in favor of Saul Property. The directed verdict was properly granted on the basis that there was no evidence that Saul Property was directly or vicariously

liable for any negligence in the maintenance or repair of the elevator, and the mere fact that an elevator mechanically malfunctions is not evidence of negligence. Because on the present record Saul Property was entitled to a directed verdict regardless of the mechanical cause of the malfunction, the spoliation issue was irrelevant. *Peterson Properties Corp.*, 235 Ga. App. at 87-88.

I respectfully dissent.

I am authorized to state that Judge Mikell joins in this dissent.

DECIDED MARCH 30, 2010 —
RECONSIDERATION DENIED APRIL 14, 2010.

*Joe A. Weeks*, for appellants.
*Joseph D. Perrotta*, for appellee.