## A07A0316. MOORE v. CRANFORD.
### (647 SE2d 295)

ELLINGTON, Judge.

Craig Moore appeals from an order of the Superior Court of Coweta County granting summary judgment in favor of Mary T. Cranford, Judge of the Probate Court of Coweta County. Moore contends, among other things, that the superior court erred in holding that the probate court had discretion to issue a Georgia firearms license beyond the 60-day period prescribed in OCGA § 16-11-129 (d) (4). For the following reasons, we affirm.

On April 26, 2006, Moore filed a complaint against Judge Cranford, contending the judge was required by Georgia law to issue him a firearms license within 60 days of the date of his application,[1] pursuant to OCGA § 16-11-129 (d) (4). In the complaint, Moore sought a writ of mandamus and also sought declaratory and injunctive[2] relief requiring the judge "to issue a Georgia firearms license to a qualified applicant not later than 60 days after the date of application if no facts establishing ineligibility have been reported." On April 18, 2006, the probate court issued Moore his firearms license. Consequently, the mandamus action was rendered moot and Moore withdrew his claim for a writ of mandamus. The superior court did not dismiss the entire case, however.

Upon finding that the "issue is one that is capable of repetition and will evade review," the superior court granted summary judgment to Judge Cranford. The superior court held that the probate court, which routinely had to wait over 60 days for the Federal Bureau of Investigation (FBI) to return criminal history reports on applicants, had "discretion to go beyond the 60 day time period" when it was necessary to make sure the applicant was qualified. The court opined that to require the probate court to issue licenses absent

---

[1] Moore applied for a firearms license on December 13, 2005.

[2] Although judges are immune from liability in civil actions seeking damages for acts performed in their judicial capacity, this immunity does not bar claims for declaratory or injunctive relief. *Earl v. Mills*, 275 Ga. 503 (570 SE2d 282) (2002).

qualifying information would "frustrate the purpose of the statute, which is to protect the public."

1. In three related enumerations of error, Moore contends the superior court erred in granting summary judgment to the probate court.

OCGA § 16-11-129 sets forth a comprehensive scheme for issuing and renewing firearms licenses. In the subsection regarding the investigation of applicants and the issuance of licenses, the Code provides in relevant part as follows:

(d) *Investigation of applicant; issuance of license; renewal.*

(1) For both license applications and requests for license renewals, the judge of the probate court shall direct the law enforcement agency to request a fingerprint based criminal history records check from the Georgia Crime Information Center and Federal Bureau of Investigation for purposes of determining the suitability of the applicant and return an appropriate report to the judge of the probate court. . . .

(2) For both license applications and requests for license renewals, the judge of the probate court shall also direct the law enforcement agency to conduct a background check using the Federal Bureau of Investigation's National Instant Criminal Background Check System and return an appropriate report to the probate judge.

(3) When a person who is not a United States citizen applies for a license or renewal of a license under this Code section, the judge of the probate court shall direct the law enforcement agency to conduct a search of the records maintained by the United States Bureau of Immigration and Customs Enforcement. . . .

(4) The law enforcement agency shall notify the judge of the probate court within 50 days, by telephone and in writing, of any findings relating to the applicant which may bear on his or her eligibility for a license or renewal license under the terms of this Code section. When no derogatory information is found on the applicant bearing on his or her eligibility to obtain a license or renewal license, a report shall not be required. The law enforcement agency shall return the application and the blank license form with the fingerprint thereon directly to the judge of the probate court within such time period. Not later than 60 days after the

date of the application the judge of the probate court shall issue the applicant a license or renewal license to carry any pistol or revolver if no facts establishing ineligibility have been reported and if the judge determines the applicant has met all the qualifications, is of good moral character, and has complied with all the requirements contained in this Code section.

OCGA § 16-11-129 (d).

The Code's background check provisions are a crucial component of the licensing scheme, considering that possessing a firearms license exempts the holder from criminal sanctions for carrying a concealed firearm in public and carrying a firearm in a school safety zone. See OCGA §§ 16-11-126 (c); 16-11-127.1 (c) (7); 16-11-128. Because carrying a concealed firearm is considered dangerous enough to be criminalized, the Code expressly provides that the probate court "shall not" issue firearms licenses to:

(1) Any person who is prohibited from possessing firearms pursuant to 18 U.S.C. Section 922;[3]

---

[3] 18 USCS § 922 (d) provides that

[i]t shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person –

(1) is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

(2) is a fugitive from justice;

(3) is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));

(4) has been adjudicated as a mental defective or has been committed to any mental institution;

(5) who, being an alien –

(A) is illegally or unlawfully in the United States; or

(B) except as provided in subsection (y) (2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101 (a) (26) of the Immigration and Nationality Act (8 U.S.C. 1101 (a) (26)));

(6) (who) has been discharged from the Armed Forces under dishonorable conditions;

(7) who, having been a citizen of the United States, has renounced his citizenship;

(8) is subject to a court order that restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child, except that this paragraph shall only apply to a court order that –

(A) was issued after a hearing of which such person received actual notice, and at which such person had the opportunity to participate; and

(B) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(1.1) Any person under 21 years of age;

(2) Any person who is a fugitive from justice or against whom proceedings are pending for any felony, forcible misdemeanor, or violation of Code Section 16-11-126, 16-11-127, or 16-11-128 until such time as the proceedings are adjudicated;

(3) Any person who has been convicted of a felony by a court of this state or any other state; by a court of the United States including its territories, possessions, and dominions; or by a court of any foreign nation and has not been pardoned for such felony by the President of the United States, the State Board of Pardons and Paroles, or the person or agency empowered to grant pardons under the constitution or laws of such state or nation or any person who has been convicted of a forcible misdemeanor and has not been free of all restraint or supervision in connection therewith for at least five years or any person who has been convicted of a violation of Code Section 16-11-126, 16-11-127, or 16-11-128 and has not been free of all restraint or supervision in connection therewith for at least three years, immediately preceding the date of the application;

(4) Any individual who has been hospitalized as an inpatient in any mental hospital or alcohol or drug treatment center within five years of the date of his or her application. The probate judge may require any applicant to sign a waiver authorizing any mental hospital or treatment center to inform the judge whether or not the applicant has been an inpatient in any such facility in the last five years and authorizing the superintendent of such facility to make to the judge a recommendation regarding whether a license to carry a pistol or revolver should be issued. When such a waiver is required by the probate judge, the applicant shall pay to the probate judge a fee of $3.00 for reimbursement of the cost of making such a report by the mental health hospital, alcohol or drug treatment center, or the Department of Human Resources, which the probate judge shall remit to the hospital, center, or department. The judge shall

---

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; or

(9) has been convicted in any court of a misdemeanor crime of domestic violence.

keep any such hospitalization or treatment information confidential. It shall be at the discretion of the probate judge, considering the circumstances surrounding the hospitalization and the recommendation of the superintendent of the hospital or treatment center where the individual was a patient, to issue the license or renewal license;

(5) (A) Any person, the provisions of paragraph (3) of this subsection notwithstanding, who has been convicted of an offense arising out of the unlawful manufacture, distribution, possession, or use of a controlled substance or other dangerous drug.

OCGA § 16-11-129 (b).

The legislature, by enacting this comprehensive statutory scheme, sought to protect the citizens of Georgia from a very wide range of potentially dangerous individuals, including convicted felons, fugitives from justice, illegal aliens, drug dealers, stalkers, addicts, the underage, the mentally defective, and those who have renounced their citizenship. The legislature made it the *duty* of the probate court to see that none of these people obtained a license to carry a handgun. See OCGA § 16-11-129 (b).

Of course, the legislature also sought to protect the rights of qualified applicants by providing that they were able to obtain a firearms license within a reasonable period of time. Thus the legislature expressly provided that the probate court *shall* issue a license to a qualified applicant within 60 days of the date of application. OCGA § 16-11-129 (d) (4). The use of the term "shall" means that the probate court judge has no discretion to extend the 60-day time period.[4]

Between these two mandates lies a quandary. In order for the probate court to do its duty, it must rely on information about an applicant provided by state and federal law enforcement agencies over which it has no control. See OCGA § 16-11-129 (c), (d) (only the local law enforcement agency must report to the probate court within 50 days). We know of no authority by which a probate court can order the FBI to return a fingerprint based background check within 50 days. And, contrary to Moore's argument, a fingerprint based criminal history check from the FBI is required. OCGA § 16-11-129 (d) (1).

As provided in the Code, the investigative process begins when the judge of the probate court "shall require" an applicant to go to an

---

[4] " 'Shall' is generally construed as a word of mandatory import." (Citation omitted.) *O'Donnell v. Durham*, 275 Ga. 860, 861 (573 SE2d 23) (2002).

"appropriate law enforcement agency in the county" to have his or her fingerprints taken. OCGA § 16-11-129 (c). The fingerprint card provided by the local law enforcement agency must comply with state and federal regulations by being "in such form and of such quality as prescribed by the Georgia Crime Information Center and under standards adopted by the Federal Bureau of Investigation." OCGA § 16-11-129 (d) (1). The fingerprint card must be in the proper form so that the local law enforcement agency may *request* a fingerprint based criminal history records check from the Georgia Crime Information Center *and* Federal Bureau of Investigation for purposes of determining the suitability of the applicant and return an appropriate report to the judge of the probate court." (Emphasis supplied.) Id. As the use of the term "request" implies, the local law enforcement agency cannot order state and federal law enforcement agencies to provide those services.

The Code also requires the probate court to direct the local law enforcement agency "to conduct a background check using the [FBI's] National Instant Criminal Background Check System and return an appropriate report to the probate judge." OCGA § 16-11-129 (d) (2). The Code provides that the local law enforcement agency "shall" notify the judge within 50 days of "any findings relating to the applicant which may bear on his or her eligibility." OCGA § 16-11-129 (d) (4). Then,

> [n]ot later than 60 days after the date of the application the judge of the probate court *shall* issue the applicant a license or renewal license to carry any pistol or revolver *if* no facts establishing ineligibility have been reported *and if* the judge determines the applicant has met all the qualifications, is of good moral character, and has complied with all the requirements contained in this Code section.

(Emphasis supplied.) Id.

Moore argues that "[i]f the probate judge does not hear from local law enforcement within 50 days, [he or] she can (and must) assume that no derogatory information has been found[,]" and issue the license. We disagree. Issuing a license under such circumstances would be a gross dereliction of the probate court's statutory duty and would put the public at risk. Unlike Moore, we cannot ignore the "ifs" in the statute.

The probate court must issue the license within 60 days, but only "*if* no facts establishing ineligibility have been reported *and if* the judge determines the applicant has met all the qualifications, is of good moral character, and has complied with all the requirements

contained in this Code section." (Emphasis supplied.) OCGA § 16-11-129 (d) (4). The probate court cannot make this determination based upon law enforcement's failure to make a timely report or to make no report at all. Although, as Moore argues, the local law enforcement agency is not required to make a "report" on an applicant when no derogatory information is found bearing on the applicant's eligibility, OCGA § 16-11-129 (d) (4), the local law enforcement agency must nevertheless "notify" the probate court within 50 days, both by telephone and in writing, "of any findings relating to the applicant which may bear on his or her eligibility for a license or renewal license under the terms of this Code section." Id. The fact that the agency found no derogatory information on the applicant certainly bears on the applicant's eligibility; thus, it is a finding that must be "reported." Because the word "report" in this context is ambiguous, we construe[5] "report" as used here to mean an official, written evaluation of a candidate — the "appropriate report" referenced in OCGA § 16-11-129 (d) (1) and (d) (2). And we construe "notify" to mean that the local law enforcement agency must advise the court in writing and by telephone that the requisite background checks were performed and that no disqualifying or derogatory information was discovered as a result of those background checks. Only when such notification has been received may the probate court issue the license.

Moore argues that construing the statute thus renders the 60-day requirement mere surplusage. We disagree. While the legislature delegated the duty to investigate an applicant to the most qualified law enforcement agencies, the Georgia Bureau of Investigation, the FBI, and the United States Bureau of Immigrations and Customs Enforcement, these agencies are not constrained by statute to return their background checks within any time period. See OCGA § 16-11-129 (c), (d) (only the local law enforcement agency must report to the probate court with 50 days). Because the probate court may only issue a license if no disqualifying or derogatory information was discovered as a result of those background checks, the 60-day period is implicitly extended by the statute itself when necessary to accommodate any delays that reasonably may be attributed to the investigative process.

For these reasons, we affirm the grant of summary judgment to Judge Cranford.

2. Moore's remaining enumeration of error is moot.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

---

[5] "[W]here an ambiguity exists[,] the construction of the statute is in the hands of the court. Of course, the cardinal rule in construing a statute is to seek the intention of the legislature." (Citations omitted.) *Eason Publications v. Atlanta Gazette*, 141 Ga. App. 321, 324 (233 SE2d 232) (1977).

DECIDED MAY 25, 2007 —
RECONSIDERATION DENIED JUNE 5, 2007 — 

*John R. Monroe*, for appellant.
*Glover & Davis, Nathan T. Lee*, for appellee.