A10A0381. RAKUSIN v. RADIOLOGY ASSOCIATES OF ATLANTA, P.C.

(699 SE2d 384)

BERNES, Judge.

Appellant Lee A. Rakusin is the personal representative and executrix of the estate of her late husband, who was employed by and owned stock in appellee Radiology Associates of Atlanta, P.C. The issue on appeal is whether Radiology Associates made a valid offer of payment to the executrix for the shares of her late husband, such that her failure to respond to the offer within the 30-day statutory deadline barred her claims for payment in excess of the amount offered by Radiology Associates. Because the uncontroverted evidence shows that Radiology Associates failed to make a valid offer of payment, we reverse the trial court's order granting partial summary judgment to Radiology Associates and dismissing the execu-

trix's counterclaims.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation omitted.) *Salahat v. Fed. Deposit Ins. Corp.*, 298 Ga. App. 624, 625 (680 SE2d 638) (2009).

So viewed, the record shows that Radiology Associates of Atlanta, P.C. is a professional corporation organized under the Georgia Professional Corporation Act, OCGA § 14-7-1 et seq. Dr. Arie Rakusin was a physician and shareholder in Radiology Associates for several years until his death in January 2007. At the time of his death, the decedent owned 1,500 shares of the common stock of Radiology Associates.

The decedent's shares were not subject to any article of incorporation, bylaw provision, or contractual agreement providing for the redemption or transfer of the shares upon his death. As such, the decedent's shares were subject to the special valuation and payment procedures set forth in OCGA § 14-7-5 (c) of the Georgia Professional Corporation Act. Under that subsection, if the corporation and the personal representative of the deceased shareholder have not reached agreement on the terms of valuation and payment for the decedent's shares,

> the fair value of the . . . shares shall be determined and paid in the same manner as if the personal representative [was] a shareholder entitled to valuation and payment for his shares under Code Section 14-2-1327.

OCGA § 14-7-5 (c). OCGA § 14-2-1327 is found in the dissenters' rights article of the Georgia Business Corporation Code, OCGA § 14-2-1301 et seq. OCGA § 14-2-1327, in turn, authorizes a professional corporation to start the valuation process by making an offer of payment pursuant to OCGA § 14-2-1325.

The decedent was survived by his wife, who was appointed as executrix for his estate in accordance with his last will and testament. Following a series of communications concerning matters pertaining to the decedent's estate, Radiology Associates issued two checks dated February 28, 2007 and tendered them to the executrix ("the RAA Checks"). One of the RAA Checks was in the amount of $750 with the notation "1500 Shares of RAA Stock Repurchase," and the other check was in the amount of $25,620 with the notation "Accounts Receivable Buy-Out."

The executrix did not cash the RAA Checks. She retained an attorney, who over the summer began to communicate with Radiology Associates' attorney regarding the checks and about how to resolve matters relating to the repurchase of the stock. Following these communications, on August 15, 2007, Radiology Associates' attorney sent a letter by certified mail to the executrix's attorney (the "August 15 Letter").

The August 15 Letter referred to the fact that the RAA Checks had been previously tendered to the executrix and stated that "[p]ursuant to OCGA Section 14-2-1325, we enclose and provide the following information." The August 15 Letter went on to state that Radiology Associates had "in good faith determined that the fair value of [the decedent's] shares consisted of" the amount of the two RAA Checks previously tendered, with no interest due on that amount, and that the executrix had the right to respond by making a demand for payment under OCGA § 14-2-1327. Included with the August 15 Letter were copies of Radiology Associates' balance sheet, income statement, and statement of changes in shareholder's equity for the fiscal year ending December 31, 2006, and a copy of the dissenters' rights article of the Georgia Business Corporation Code.

On September 25, 2008, the executrix's attorney sent a letter to Radiology Associates estimating the fair value of the decedent's shares plus interest to be $633,277 and demanding payment of the same (the "September 25 Letter"). The September 25 Letter alleged that Radiology Associates had not made an offer of payment in compliance with OCGA § 14-2-1325, and that, as a result, the executrix was making a timely demand for payment.

Radiology Associates' attorney responded to the September 25 Letter, asserting that the demand for payment was time-barred and that the amount demanded was not a fair valuation of the decedent's stock. Radiology Associates thereafter commenced the instant action seeking a judicial determination of the value of the decedent's shares. Radiology Associates asserted that it had made a valid offer of payment under OCGA § 14-2-1325 such that the executrix's failure to respond to the offer within the 30-day statutory deadline barred her claims for payment in excess of the amount it had offered.

The executrix filed an answer stating that she was thereby tendering the RAA Checks back to Radiology Associates. The executrix also asserted several counterclaims, including a claim for payment of the fair value of the decedent's stock and for a declaratory judgment that Radiology Associates had not made a valid offer of payment. Based upon her claim that the offer of payment was invalid, the executrix asserted that her September 25 Letter was a timely demand for payment under OCGA § 14-2-1327 and that she was entitled to the amount demanded in her letter.

YALE LAW LIBRARY

Radiology Associates moved for summary judgment on the threshold question of whether it had made a valid offer of payment under OCGA § 14-2-1325, and, therefore, whether the executrix's September 25 Letter was untimely as a matter of law. After receiving the submissions of the parties and hearing oral argument, the trial court ruled that Radiology Associates had made a valid offer of payment and that the executrix's September 25 Letter was time-barred. Consequently, the trial court granted partial summary judgment in favor of Radiology Associates and dismissed the executrix's pertinent counterclaims. This appeal followed.

1. The executrix contends that the trial court erred in granting partial summary judgment to Radiology Associates because there was no valid offer of payment as a matter of law under the plain language of OCGA § 14-2-1325. The executrix maintains that the statutory language is clear that an offer of payment "must be accompanied by" certain information and documents. See OCGA § 14-2-1325 (b). She argues that Radiology Associates failed to satisfy this mandatory requirement when it sent the RAA Checks in February 2007, but then waited until August 2007 to provide the required information and documents. We agree.

Under OCGA § 14-2-1325 (a), a corporation can start the valuation process by providing its own assessment of the fair value of the shares in an offer of payment to the shareholder. However, OCGA § 14-2-1325 (b) expressly provides:

(b) The offer of payment *must be accompanied by*:

(1) The corporation's balance sheet as of the end of a fiscal year ending not more than 16 months before the date of payment, an income statement for that year, a statement of changes in shareholders' equity for that year, and the latest available interim financial statements, if any;

(2) A statement of the corporation's estimate of the fair value of the shares;

(3) An explanation of how the interest was calculated;

(4) A statement of the dissenter's right to demand payment under Code Section 14-2-1327; and

(5) A copy of [Article 13 of the Georgia Business Corporation Code pertaining to dissenters' rights].

(Emphasis supplied.) OCGA § 14-2-1325 (b). If the professional corporation makes a valid offer of payment, the shareholder "is deemed to have accepted such offer" unless he responds to the offer in writing within 30 days. OCGA § 14-2-1325 (c). See also OCGA § 14-2-1327 (b).

In construing statutes, we strive to give effect to the intent of the

legislature. *Moore v. Moore-McKinney*, 297 Ga. App. 703, 706 (1) (678 SE2d 152) (2009). "Where the language of a statute is plain and unambiguous, and does not lead to contradictory, absurd, or wholly impractical results, it is the sole evidence of legislative intent and must be applied according to its express terms." *Flores v. Exprezit! Stores 98-Ga.*, 304 Ga. App. 333, 336 (696 SE2d 125) (2010). We also must "give each part of the statute meaning and avoid constructions that make some language mere surplusage." (Citation omitted.) *J. Kinson Cook, Inc. v. Weaver*, 252 Ga. App. 868, 870 (1) (556 SE2d 831) (2001). Following these principles, our Court has held that the word "must" is synonymous with "shall," and that the use of such statutory language generally means that the legislature intended for the provision to be mandatory. See *Beach v. B. F. Saul Property Co.*, 303 Ga. App. 689, 695 (2), n. 4 (694 SE2d 147) (2010); *Moore v. Cranford*, 285 Ga. App. 666, 670 (1), n. 4 (647 SE2d 295) (2007); *Henderson v. State of Ga.*, 205 Ga. App. 542, 542-543 (422 SE2d 666) (1992).

Employing these rules of statutory construction, we conclude that the language of OCGA § 14-2-1325 (b) providing that an offer of payment "must be accompanied by" certain information and documents carries mandatory import. The clear legislative intent is that the offer of payment provide sufficient material information and documents to put the shareholder on notice of his rights and to ensure that he can make an informed decision as to whether to accept the corporation's valuation of the shares within the 30-day statutory deadline. This legislative intent would be undermined if the statutory language were interpreted as permissive rather than mandatory. Moreover, our conclusion that the language is mandatory is consistent with the Comment to OCGA § 14-2-1325 (b), which emphasizes the importance of information and documents being supplied at the time the offer of payment is made:

> Since the shareholder must decide whether or not to accept the payment in full satisfaction, he must be furnished *at this time* with the financial information specified in Section 14-2-1325 (b), with a reminder of his further rights and liabilities, and with a copy of this article.

(Emphasis supplied.) Our conclusion likewise is consistent with the persuasive authority of *Foard v. Avery County Bank*, 610 SE2d 460, 461-463 (N.C. Ct. App. 2005), where the North Carolina Court of Appeals treated a similar provision stating that payment "shall be accompanied by" certain specific information as being mandatory rather than permissive.

Radiology Associates' offer of payment, however, was not accom-

panied by the statutorily required information and documents. In this regard, the uncontroverted evidence shows that Radiology Associates' tendering of the RAA Checks to the executrix in February 2007 was an offer of payment. "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981). See *Caley v. Gulfstream Aerospace Corp.*, 428 F3d 1359, 1373 (II) (E) (1) (11th Cir. 2005) (applying Georgia law). "Any conduct from which a reasonable person in the offeree's position would be justified in inferring a promise in return for a requested act or a requested promise by the offeree amounts to an offer." Richard A. Lord, 1 Williston on Contracts § 4:20 (4th ed.). See also Restatement (Second) of Contracts § 4 (1981) ("A promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct."). By tendering the RAA Checks to the executrix, Radiology Associates clearly and unambiguously was manifesting a willingness to pay the amounts reflected in those checks in return for the executrix accepting those amounts as a fair valuation of what was owed the decedent.[1] Radiology Associates' tendering of the RAA Checks, therefore, was an offer of payment to the executrix as a matter of law.

Instead of including the required information and documents with the RAA Checks, Radiology Associates waited and sent the information and documents to the executrix by way of the August 15 Letter. But Radiology Associates could not satisfy the requirements of OCGA § 14-2-1325 (b) by combining the actions of sending the RAA Checks in February 2007, and then providing the required information and documents approximately six months later. As noted above, the language of OCGA § 14-2-1325 (b) is clear, unambiguous, and mandatory: an offer of payment "must be accompanied by" the specified information and documents. Nothing in the statute allows an offer to be made and the information to be sent months later.

Radiology Associates, however, argues that a substantial compliance standard should apply to the statutory requirements and that it met such a standard in this case. We are unpersuaded. Substantial compliance requires "actual compliance as to all matters of substance," *Gen. Elec. Credit Corp. &c. v. Brooks*, 242 Ga. 109, 118 (249 SE2d 596) (1978), and there is no such compliance where material

---

[1] Radiology Associates emphasizes that *after* it tendered the RAA Checks, it did not initially believe that there was a dispute over the stock valuation because the executrix did not return the checks or otherwise respond for many months. That is a different issue, however, from whether the tendering of the RAA Checks in the first instance constituted an offer.

information is omitted from a document that is required by statute to provide notice to the recipient. See *Banker v. Cole*, 278 Ga. 532, 533-535 (3) (604 SE2d 165) (2004); *Krapf v. Wiles*, 252 Ga. 452, 453-454 (314 SE2d 656) (1984). Cf. *Harvey v. Meadows*, 280 Ga. 166, 168-170 (3) (626 SE2d 92) (2006); *Associated Indem. Corp. v. Sermons*, 175 Ga. App. 513, 516-517 (1) (333 SE2d 902) (1985). Accordingly, in our view the requirement imposed by OCGA § 14-2-1325 (b) that an offer of payment "must be accompanied by" certain information and documents is a matter of substance, such that the failure to comply with it renders the offer of payment invalid. See, e.g., *Atlas Casing Co. v. Joyner*, 192 Ga. App. 738, 740-741 (1) (386 SE2d 397) (1989) (where statute required that certificate of title be delivered at the time of the delivery of the car, delivery of certificate of title nine months later was not substantial compliance). Compare *VSI Enterprises v. Edwards*, 238 Ga. App. 369, 376 (2) (518 SE2d 765) (1999) (although corporation made a belated offer of payment to the dissenting shareholder, the offer was in substantial compliance with the statute where the offer was *"accompanied by the required financial information"*) (emphasis supplied).

Radiology Associates also contends that the August 15 Letter, standing alone, constituted a valid offer of payment under OCGA § 14-2-1325. Again, we are unpersuaded. The August 15 Letter did not contain any language invoking an offer, but simply referred to the previously tendered RAA Checks and stated that "[p]ursuant to OCGA Section 14-2-1325, we enclose and provide the following information." Read in context, the August 15 Letter was simply a belated effort by Radiology Associates to supply the information and documents that were required to be supplied at the time the RAA Checks were tendered in February 2007.

For these combined reasons, Radiology Associates failed to make a valid offer of payment as a matter of law under the plain language of OCGA § 14-2-1325. It follows that the executrix was not bound by Radiology Associates' valuation of the decedent's shares contained in the offer of payment, and that the executrix's September 25 Letter making a demand for payment was not untimely. Accordingly, the trial court erred in granting partial summary judgment in favor of Radiology Associates and in dismissing the executrix's counter-claims.

2. In light of our decision in Division 1, the executrix's remaining assertions of error are moot and need not be considered.

*Judgment reversed. Smith, P. J., concurs. Adams, J., concurs in judgment only.*

182

*Baker, Donelson, Bearman, Caldwell & Berkowitz, Steven G. Hall, Robert G. Brazier*, for appellant.
*Chorey, Taylor & Feil, Otto F. Feil III*, for appellee.