[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-10537

Non-Argument Calendar

_____

FIRST IC BANK,

Plaintiff-Appellant,

*versus*

NORTH AMERICAN TITLE INSURANCE COMPANY,

Defendant-Appellee,

INVESTORS TITLE INSURANCE COMPANY,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-05055-SDG

_____

Before BRANCH, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

First IC Bank appeals the district court's order granting North American Title Insurance Company's motion to dismiss First IC Bank's complaint, alleging breach of contract and conversion, for failure to state a claim upon which relief can be granted. First IC Bank argues that the district court erred by holding that it was bound to the decisions of its closing attorney to obtain a new closing protection letter from a different insurer and by holding that an action for conversion could not lie. After review, we affirm the district court's ruling.

## I.    Background

On March 15, 2019, Ying Duan executed an agreement with Israel and Jill Malowany to purchase real property located in Johns Creek, Georgia.[1]    The parties selected Dickason Law Group

---

[1] The following facts from the plaintiff's amended complaint and exhibits are taken as true for the purposes of this appeal. *See McGroarty v. Swearingen*, 977 F.3d 1302, 1306 (11th Cir. 2020).

(collectively, Dickason) as the closing attorney. To finance the purchase of the property, Duan executed a loan agreement with Plaintiff First IC Bank. The loan agreement provided that a portion of the loan would be used to satisfy an existing security interest on the property held by J.P Morgan Chase Bank (Chase), thereby giving First IC Bank a first-priority interest in the property after closing.

On March 25, 2019, Dickason, as an issuing agent of North American Title Insurance Company (North American), issued a closing protection letter (CPL) and a Commitment Letter for Title Insurance to First IC Bank.[2] The CPL described North American's offer to indemnify First IC Bank for "losses due to either (1) the failure of the Issuing Agent to follow the lender's closing instructions or (2) dishonesty of the Issuing Agent in connection with the closing," "subject to the [c]onditions and [e]xclusions"

---

[2] Under Georgia law, a closing protection letter is "insurance that indemnifies a buyer, lender, or seller in transactions where title to real estate is being conveyed solely against losses not to exceed the amount of the settlement funds only because of the following acts of the person responsible for the disbursement of settlement funds: (A) Acts of fraud, theft, dishonesty, or negligence in handling settlement funds or documents in connection with a closing, but only to the extent that the acts affect status or priority of title in the real estate insured by the title insurance; and (B) Failure to comply with written closing instructions by a proposed insured when agreed to by the title agency or title agent relating to title insurance coverage, but only to the extent that the acts affect status or priority of title in real estate insured by the title insurance." O.C.G.A. § 33-7-8.1. *See also The Law of Closing Protection Letters*, 36 TORT & INS. L.J. 845 (2001).

listed in the letter, and provided that "the Company [North American] issues or is contractually obligated to issue title insurance for your [First IC Bank's] protection in connection with the closing of the Real Estate Transaction."

Thereafter, on April 15, 2019, North American terminated Dickason as an issuing agent for its CPL's and title insurance policies. Three days later, Dickason arranged to obtain a CPL and title insurance policy from a different insurance company, Investors Title Insurance Company (Investors). According to First IC Bank, Dickason did not inform it of the change in title insurance companies or send First IC Bank a copy of the Investors CPL. The Investors CPL specified that First IC Bank's "transmittal of Funds or documents to the Issuing Agent or Approved Attorney for the Real Estate Transaction constitutes Your acceptance of this letter" and that "[t]his letter supersedes and cancels any previous letter or similar agreement for closing protection that applies to the Real Estate Transaction."

On April 19, 2019, First IC Bank sent Dickason instructions to perform the closing for Duan's purchase of the Malowany's property and wired Dickason $826,724.58 to fund the purchase. The instructions listed an "estimate of fees and costs" that included an entry for payment for title insurance and CPL fees to North American.

After the closing, Dickason sent First IC Bank a settlement statement which stated that Dickason had paid Investors, rather than North American, for the CPL and for the title insurance policy.

Notwithstanding the information in the post-closing statement, First IC Bank alleged that it did not learn of Investors involvement until May 24, 2019, when Duan notified First IC Bank that Chase's security interest had not been satisfied and Chase had demanded that the Malowanys make further mortgage payments or Chase would foreclose on the property.  Additionally, First IC Bank alleged it did not learn of Dickason's termination as an issuing agent for North American until May 29, 2019, when First IC Bank received a letter from North American, backdated April 19, 2019, saying Dickason's issuing agency authority was terminated effective April 15.

According to First IC Bank's pleadings, Dickason did not use the funds First IC Bank wired to him to satisfy Chase's security interest as directed, but instead misappropriated them.   The Malowanys made three mortgage payments to Chase before First IC Bank, on September 17, 2019, paid Chase $643,363.23 to satisfy the loan.  First IC Bank demanded Investors indemnify it for its losses under the Investors CPL, but Investors refused to do so.

In September 2019, First IC Bank sued North American in the State Court of Gwinnett County, Georgia.  North American removed the suit to the U.S. District Court for the Northern District of Georgia.  In June 2020, the district court granted First IC Bank's motion for leave to file an amended complaint.

First IC Bank's amended complaint added Investors as a named defendant, pleading in the alternative and asserting six claims for relief: three against North American (breach of contract, conversion by its agent, and attorney's fees and expenses under

O.C.G.A. § 13-6-11) and three against Investors (breach of contract, conversion by its agent, and attorney's fees and expenses under O.C.G.A. § 13-6-11).

In the amended complaint, First IC Bank alleged that North American was liable in contract because the CPL North American issued to First IC Bank on March 25 was still enforceable. In that CPL, North American expressly agreed to indemnify the plaintiff for its losses if Dickason failed to follow First IC Bank's closing instructions or for theft or fraud by Dickason in connection with the closing.

First IC Bank alleged North American was liable for Dickason's actions because North American's revocation of Dickason's status as its issuing agent did not become effective until First IC Bank received notice of it in May.

With regard to its claims against Investors, First IC Bank alleged that Dickason was an issuing agent of Investors when it issued the CPL and title insurance policy in April. Because "the only consideration required by" Investors was "acceptance of the CPL by Plaintiff, not reliance on the CPL," and because "First IC Bank accept[ed] the CPL" or would have if it had been notified by Dickason, IC Bank alleged that the Investors CPL was enforceable against Investors and that Investors was liable for its breach and its agent's conversion.

In July 2020, North American moved to dismiss First IC Bank's amended complaint and the district court granted the

motion in January 2021.  In its order dismissing the amended complaint, the district court held that First IC Bank's pleaded facts confirmed that there was no valid and enforceable contract with North American.  Rather, First IC Bank acknowledged in its pleading that Dickason, acting as an agent of First IC Bank, "obtained a subsequent CPL and title policy from Investors prior to closing," which the bank accepted when it wired closing funds to Dickason.  And by the express terms of the Investors CPL, the North American CPL was superseded by the Investors CPL when First IC Bank accepted it.

First IC Bank did not dispute the chronology of events but alleged that it should not be bound by Dickason's action obtaining a new CPL from Investors because it had no knowledge until well after the closing that Dickason had been terminated as an issuing agent by North American or that Dickason had obtained a new title and CPL policy with Investors.  The district court rejected First IC Bank's argument.  Specifically, the district court noted that First IC Bank's own allegations confirmed that Dickason was acting as its agent, and under Georgia law an agent's actions are binding on the principal.  And even if Dickason did not inform the bank of the change, First IC Bank was charged with constructive knowledge because, as an agent, Dickason's knowledge was imputed to principal First IC Bank.  The court also rejected First IC Bank's claim for conversion because the money it was seeking to recover for the amounts it paid to satisfy the Chase loan was not a "specific, separate, identifiable fund."  Thus, the district court dismissed IC

Bank's claims against North American with prejudice and ordered IC Bank to show cause why its claims against Investors should not be dismissed for failure to timely effectuate service. Thereafter, First IC Bank voluntarily dismissed without prejudice its claims against Investors. This appeal followed.

## II.    Discussion

First IC Bank argues that the case should have been allowed to proceed to discovery because the bank set out a viable claim for breach of contract and conversion and the trial court erred in ruling Dickason was the bank's agent as a matter of law.

"We review de novo the district court's grant of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Ga. State Conf. of the NAACP v. City of LaGrange*, 940 F.3d 627, 631 (11th Cir. 2019) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). As explained in *Ashcroft*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* We may "affirm the district court's dismissal on any ground that is supported by the record." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) (quotation omitted).

A.  Breach of Contract Claim

"Under OCGA § 13–3–1, the plaintiff in a breach of contract action has the burden of pleading and proving the existence of a valid contract by showing that there are parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." *Eastview Healthcare, LLC v. Synertx, Inc.*, 674 S.E.2d 641, 646 (Ga. App. 2009).  Therefore, First IC Bank must properly allege that an enforceable contract existed with North American to survive a motion to dismiss.

An offer to contract is "'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Rakusin v. Radiology Assocs. of Atl., P.C.*, 699 S.E.2d 384, 388 (Ga. App. 2010) (citing Restatement (Second) of Contracts § 24 (1981)).  Consideration is "essential to a contract," involves "a performance or a return promise" that is "bargained for by the parties to a contract" and, under Georgia law, a "valuable consideration is founded on money or something convertible into money or having value in money."  O.C.G.A. §§ 13-3-40 to 13-3-42. Mutual acceptance is required under Georgia law, and, in determining whether there was acceptance,

> courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's

> manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent. Further . . . the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement.

*Bedsole v. Action Outdoor Advert. JV, LLC*, 750 S.E.2d 445, 450 (Ga. App. 2013) (quotation omitted).

Under Georgia agency law, an "agent's authority shall be construed to include all necessary and usual means for effectually executing it." O.C.G.A. § 10-6-50. "The principal shall be bound by all representations made by his agent in the business of his agency and also by his willful concealment of material facts, although they are unknown to the principal and known only by the agent." *Id.* § 10-6-56. "Notice to the agent of any matter connected with his agency shall be notice to the principal." *Id.* § 10-6-58.

While the district court held that the North American CPL was superseded by a provision in the Investors CPL, we do not need to confront this issue to affirm. Instead, we hold that First IC Bank did not plead that it ever validly accepted North American's CPL offer, and therefore did not allege a viable claim for breach of contract against North American.

First IC Bank pleaded that, on March 25, 2019, Dickason issued North American's CPL to First IC Bank. As First IC Bank concedes in its brief, the CPL was not a contract, but rather an offer

to contract.  This court agrees.  While the closing protection letter did not explicitly say it was an offer, the letter indicated a willingness to contract and indemnify First IC Bank according to the conditions, exceptions, and preconditions listed. [3]  The Title Insurance Commitment Letter issued in conjunction with the CPL explicitly stated it was an "offer to issue . . . title insurance."

First IC Bank argues that it accepted the North American CPL offer when they sent the funds to Dickason on April 19 to initiate the closing, without actual knowledge that he was no longer an authorized issuing agent of North American.  However, regardless of Dickason's status as an issuing agent for North American, as admitted by First IC Bank, Dickason was at all relevant times the bank's closing attorney and agent.  Under Georgia law, Dickason's knowledge is imputed to the principal First IC Bank.  *See* O.C.G.A. § 10-6-58; *see also Vazemiller v. Sanders*, 861 S.E.2d 626, 791 (Ga. App. 2021) (quotation omitted) ("notice to an attorney is notice to the client employing him, and that knowledge of an attorney is knowledge of his client, when such notice and knowledge come to the attorney in and about the subject matter of his employment."). Therefore, at the time that

---

[3] Additionally, a contract requires consideration and acceptance, neither of which appears to have occurred at the time in which the contract was delivered.  *See also The Law of Closing Protection Letters*, 36 TORT & INS. L.J. 845, 853 (2001) ("Regardless of whether a lender accepts a closing protection letter, the letter creates no obligation on the part of the title insurer unless and until the lender orders title insurance from the company and delivers closing funds and documents to the settlement agent.").

12                   Opinion of the Court                   21-10537

First IC Bank sent the closing funds to Dickason, First IC Bank was charged with constructive knowledge that he was no longer an issuing agent of North American and that he had procured title insurance and a CPL with a different company.[4]

Taken as true, the pleadings do not indicate an objective intent by First IC Bank to accept the North American CPL because at the time First IC Bank wired the money at closing, First IC Bank knew (1) that Dickason was no longer North American's issuing agent and (2) that Investors, through First IC Bank's issuing agent Dickason, had issued First IC Bank a subsequent, valid CPL. Under Georgia law, acceptance is an objective standard "whereby" First IC Bank's "intention is deemed to be that meaning a reasonable man in the position of the other contracting party," North American, "would ascribe to" First IC Bank. *Bedsole,* 750 S.E.2d at 450. Here, First IC Bank was sending money to Dickason knowing that Dickason had lost his status as an issuing agent of North American and knowing that Dickason had another valid CPL pending that was to be accepted in the same manner. Additionally,

---

[4] IC Bank cites *Hodgson v. Hart*, 142 S.E. 267, 269 (1928) and *Downs v. McNeil*, 520 F.3d 1311, 1320 (11th Cir. 2008), to argue for the first time on appeal that because Dickason was engaged in fraud or otherwise acted against the interest of IC Bank, the notice from North American that he was no longer its agent could not be imputed to IC Bank, the principal. However, because IC Bank did not raise this argument in the district court, and because none of the recognized exceptions that allow a circuit court to entertain an argument raised for the first time on appeal apply, we do not consider it. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004).

the settlement statement says that Investors was paid, and not North American, also indicating that there was no acceptance of North American's offer.  Taken together, no reasonable person would believe that First IC Bank's intention was to accept the North American offer.

B.  Claims for Conversion and Promissory Estoppel

Once agency has been established, any person outside the agency relationship who has dealt with that agent is entitled to "presume that such authority will continue until it is shown to have been terminated" and that a third party can assume the former principal will give notice if agency is terminated.  *Burch v. Americus Grocery Co.*, 53 S.E. 1008, 1009 (Ga. 1906) (quotations omitted).  "It is a general rule of law, therefore, upon which there seems to be no conflict of authorities, that all acts of a general agent within the scope of his authority, as respects third persons, will be binding on the principal, even though done after revocation."  *Id.*

First IC Bank alleges North American is liable for conversion because Dickason did not use First IC Bank's settlement funds as directed to pay off the Chase lien.  First IC Bank also alleges that North American is estopped from alleging that Dickason was no longer its issuing agent on April 19 because First IC Bank did not have actual notice that he was no longer North American's agent.

While Dickason was not acting as North American's issuing agent at the time IC Bank sent him the closing funds, the knowledge that he was not acting as an issuing agent for North

American was imputed to First IC Bank on April 15, when Dickason received that notice.  His issuing agency with North American terminated on April 15 and the closing funds were sent and directed to Investors on April 19.  Therefore, North American cannot be liable as a principal because Dickason was not its agent, even if there was a viable action for conversion.[5]

First IC Bank argues for the first time on appeal that "the amended complaint establishes a claim for promissory estoppel." The bank did not make a motion below to submit a third amended complaint which included this claim.  Because this claim was not raised in the district court, we will not consider it for the first time on appeal.[6] *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004).

---

[5] Generally, in Georgia an action for conversion will not lie for recovery of money, unless "such money . . . comprise[s] a specific, separate, identifiable fund to support an action for conversion." *See Taylor v. Powertel, Inc.*, 551 S.E.2d 765, 769 (Ga. App. 2001).  Although money transferred via wire and other electronic means has been held to constitute "specific and identifiable funds" for purposes of a conversion action, First IC Bank is not seeking to recover all the closing funds it wired to Dickason.  Instead, it is seeking to recover other sums it had to subsequently pay due to North American's breach of contract.  Therefore, First IC Bank failed to state a claim for conversion.  But even assuming arguendo that First IC Bank's allegations could sustain a claim for conversion, its claim fails on the merits for the reasons stated in this opinion.

[6] Because we affirm the dismissal of this cause of action for failure to state a claim upon which relief could be granted, we do not reach First IC Bank's

**AFFIRMED.**

---

request for leave to amend its complaint a third time on remand to add a claim for promissory estoppel.